SAMBOS, Appellant, v. CLEVELAND, CINCINNATI, CHICAGO and ST. LOUIS RAILROAD COMPANY, Respondent.

**St. Louis Court of Appeals, December 15, 1908.**

1. **MASTER AND SERVANT: Negligence.** Where several employees under the direction of a foreman were engaged in piling railroad ties, which were slippery with ice, in piles eight or nine feet high, and on the completion of one pile a workman was directed by the foreman to commence another pile adjacent, and while such workman was stooping to place a tie upon the ground for that purpose, the foreman gave a hurried order to other workmen to throw another tie upon the completed pile, thereby causing it to fall and injure the first mentioned workman, this was sufficient to justify an inference of negligence on the part of the employer which would render it liable for the injury so inflicted.

2. ————: ————: **Pleading.** In an action for such injury, where the petition alleged that while the plaintiff was at work in a stooping posture in the exercise of reasonable care, other employees of the defendant by the direction of the foreman tossed one of the ties upon the stack, which, by reason of its slippery condition, caused the ties to slide and roll upon the plaintiff, this was a sufficient allegation that the order of the foreman was negligently given.

3. ————: ————: **Assumption of Risk.** Under the law of Illinois a servant does not assume the risk of injury from his master's negligence, and in the case mentioned the unexpected act of the foreman was not a risk assumed by the employee.

4. ————: ————: **Fellow-Servant.** Under the facts in this case, the foreman of a gang of workmen engaged in piling the ties was not the fellow-servant of such workmen.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Blevins & Jamison* for appellant.

(1) On demurrer to evidence, plaintiff is entitled to have the facts viewed as favorably to him as the testimony permits, and to enjoy the benefit of every reasonable inference in his favor therefrom. Alcorn v. Railroad, 108 Mo. 81; Buck v. Railroad, 108 Mo. 179; Keown v. Railroad, 141 Mo. 86; Bank v. Simpson, 152 Mo. 638. In applying this rule to an action for negligence, it must be remembered that negligence is not a fact which is subject to direct proof, but an inference from facts put in evidence. Baird v. Railroad, 146 Mo. 265. And plaintiff is entitled to the most favorable inference. Holman v. Pinto Creek Co., 102 Mo. App. 423; Halloway v. Kansas City, 184 Mo. 19; Phelon v. Granite Co., 115 Mo. App. 423; Deitring v. Transit Co., 109 Mo. App. 524. (2) *a.* It is the duty of the master to furnish the servant a reasonably safe place within which to work and to see that the appliances he has to use are in a reasonably safe condition. Hedler v. Stove & Range Co., 136 Mo. 3; Doyle v. Trust Co., 140 Mo. 1; Rogers v. Printing Co., 103 Mo. 683; Rigsby v. Supply Co., 115 Mo. App. 297; Robertson v. Const. Co., 115 Mo. App. 456; Reichla v. Gruensfelder, 52 Mo. App. 43; Turner v. Haar, 114 Mo. 335. *b.* The duty of seeing that the place, tools and appliances are such that the servant can perform his duties in reasonable safety is a personal one which the master cannot delegate to a servant or any other person and thereby escape liability on his part. Rodney v. Railroad, 127 Mo. 676; Zellars v. Water & Light Co., 92 Mo. App. 107; Steube v. Foundry Co., 85 Mo. App. 640. The law prevailing in the State of Illinois, as evidenced by the decisions of the Supreme and Appellate Court of that State, is in all respects in line with the decisions of the Supreme Court and the courts of appeal of this State as to the principles of law mentioned in the two preceding paragraphs,

designated as "*a*" and "*b*." Car Co. v. Laack, 143 Ill. 242; Lumber Co. v. Ligas, 172 Ill. 315.   (3)   As defendant's foreman had authority over plaintiff and his colaborers to order and direct their work in the handling of the ties, and as he did so direct them, and as each and every one of them were required to obey and did obey his orders, said foreman was not a fellow-servant of plaintiff and other laborers who were at work with him, but a vice-principal. Smith v. Car & Foundry Co., 122 App. 610, and authorities cited in said, opinion. Bien v. Transit Co., 108 Mo. App. 399; LaSalle v. Kostka, 190 Ill. 130; Hair & Bristle Co. v. Mueller, 203 Ill. 558.   (4) The negligence of the master is not one of the perils incident to the business which the servant assumes.   Railroad v. Spurney, 197 Ill. 471; Dakan v. Mercantile Co., 197 Mo. 267.   If the peril of the servant in the performance of his duty is increased by the negligence of the master, and if the servant, knowing that the master has been thus negligent, and that the negligence has rendered the performance of his duty more hazardous, continues in the performance of that duty, a question of contributory negligence then arises, not a question of assumption of risk.   Blanton v. Dold, 109 Mo. 64; Curtis v. McNair, 173 Mo. 280; Cole v. Railroad, 183 Mo. 81.   (5) There was no evidence tending to show that plaintiff was guilty of contributory negligence. In no event would a court be justified in declaring as a matter of law that plaintiff was guilty of such contributory negligence as would bar a recovery.   "While a servant is obeying his master's orders to perform the work, the master is liable for the injury received by the servant, unless the danger is so imminent that a man of ordinary prudence would not incur it."   Offutt   v. Columbia Exposition, 175 Ill. 472.

*James R. Van Slyke* for respondent.

*George F. McNulty* of counsel.

This injury occurred in Illinois and the rights of the parties would be determined by the laws of that State. Appellant appreciating this fact has cited authorities which he urges support his contentions. We have endeavored to analyze these cases in another portion of this brief and in order to show affirmatively the law of this State. Harvester Co. v. Zakzewski, 220 Ill. 522, deals with a case very similar to the case at bar, the only difference being a pile of lumber and a pile of ties, and in the Illinois case an order which bears the ear marks of negligence. The law of Illinois has been interpreted by the Kansas Court of Appeals on this identical question in Rahm v. Railroad Co., 108 S. W. 570. The courts of Illinois hold that even if there is a promise to repair or an assurance of safety when the work done or the tool furnished is simple, that a plaintiff still assumes the risk and cannot recover. Kestner v. Steel Foundry, 233 Ill. 35; Webster v. Nesbit, 205 Ill. 273; The Gunning System v. LaPointe, 212 Ill. 274; Railroad v. Meyers, 226 Ill. 358.

GOODE, J.—Plaintiff's right arm was broken in an accident which occurred December 26, 1906, near Flat Rock, a station on defendant's railway in the State of Illinois. Plaintiff was in the service of defendant, and, with some thirty laborers, was engaged on said date in stacking ties on defendant's right of way. Two tracks ran parallel at the point where the work was in progress—one the main line, which ran through a cut twelve feet deep, and the other a siding, or as the witnesses said, a new track, which was on the top of the embankment. The ties were in the ditch by the main track, and were carried by the men to the top of the bank and piled there. Water commonly stood in the

ditch, but it had frozen and the ties were covered with ice, which the men who lifted them from the ditch, did not entirely clean off before throwing them on the stacks, and hence they were left slick and inclined to slip on each other. Steps had been made in the side of the embankment, up which the men climbed, several of them carrying a single tie. The evidence tends to show these facts: the ties were ponderous and about a foot in width; they were piled in stacks from eight to nine feet high, about six feet either way at the base, narrowing toward a top about two feet wide, on which two ties rested. Plaintiff's particular task was to arrange the ties when placed by other laborers on the stack so they would lie straight. He was not performing this task when hurt, but, by direction of the foreman of the gang who watched the work and controlled the manner in which it was done, was adjusting a tie that lay on the ground and probably some two or three feet from the stack the men were working on, so as to start a new stack. That is to say, plaintiff was in the act of placing a single tie where a new pile was to be raised. He was doing this by order of the foreman, as said; but the order was not given by word of mouth, but by pointing, because plaintiff was a Greek who did not understand English. To carry out the order plaintiff stooped over to move the tie into the right place, and while he was doing this, some of the gang tossed another tie toward or on the top of the pile which struck either on the top or about a foot and a half below; whereupon the pile toppled and the ties in it scattered, one of them falling on and breaking plaintiff's arm. When plaintiff stooped over he supposed no more ties would be thrown on the pile from which he turned, because, as he swore, he considered it finished, inasmuch as the foreman had ordered him to start a new stack. The last tie, which caused the stack to tumble, was thrown on it in obedience to a special order of the foreman, who, with an oath, told the men who were carrying this tie, to hurry up and

throw it on the pile. The foreman had been in charge all along of the work of getting the ties out of the ditch and stacking them on the bank, and his orders were obeyed by the men. The witnesses were examined minutely as to the circumstances of the accident, and though there are some discrepancies in their testimony, considered in its best phase for the plaintiff, it would prove the facts as we have narrated them. The petition, after giving substantially the same narrative regarding the particulars of the event, proceeds as follows:

"Plaintiff further states that he and the other employees of defendant who were then and there engaged in the work of handling and piling said ties, were subject to and were required to and did obey the orders of defendant's said foreman, and said foreman had authority from defendant to direct each and every one of said employees in and about the said work and at all said times did so direct them; that said foreman had authority to point out the place where said ties were to be piled and to determine how many ties should be placed in the pile and the width and height of the piles of ties, and that said foreman did direct plaintiff and the other employees in and about the said work and had so directed them as to the building of the pile where plaintiff was at work when he sustained injuries as hereinafter mentioned.

"Plaintiff further states that by reason of the great height and the sloping condition of the sides of the said pile of ties and the fact that they were covered with ice and sleet and were slick and slippery, and the position where plaintiff was required to be and continue at work by defendant's said foreman, as aforesaid, and the further fact that said ties were by the direction of defendant's said foreman, being thrown and tossed upon the top of said pile, plaintiff was, by direction of defendant's said foreman, placed and required to be and

134 App—30

work in a situation that was not reasonably safe and where plaintiff was liable to be struck by said ties and injured, and that defendant and its said foreman, then and there knew that plaintiff was not in a reasonably safe place to work, or would have known thereof by the exercise of reasonable care for the plaintiff's safety.

"Plaintiff further avers that while he was so employed and at work as aforesaid, and in the exercise of reasonable care for his own safety, other employees of defendant who were then and there at work, by direction of defendant's said foreman, carried one of said ties to and threw and tossed the same upon the top of the said pile or stack of ties where plaintiff was at work, and that said tie, by reason of the condition aforesaid, did not remain in place but slipped and thereby caused other ties in said pile to slip, and that several of the said ties were thereby caused to and did slide, roll and fall down to and upon plaintiff and upon plaintiff's right arm with such force and violence as to break and crush the bones thereof."

The defenses were, a general denial, a plea of contributory negligence and of assumption of the risk by plaintiff. The law of Illinois was pleaded in the answer for the purpose of showing to what extent the two latter defenses were available in the jurisdiction where the accident occurred. When the testimony for plaintiff was in, the court directed a verdict for defendant, plaintiff took a nonsuit with leave to move to set the same aside, and his motion having been denied, he prosecuted this appeal.

1. In our opinion the facts in proof would support an inference of negligence on the part of defendant's foreman and therefore presented a case for the jury, unless plaintiff was shown to have contributed to his injury by his own fault or to have assumed the risk of such an accident. For the foreman to direct plaintiff to commence a new stack of ties in the immediate vicinity of a stack eight or nine feet high, two feet wide at

the top and composed of slippery ties, and give a hurry command to other members of the gang, emphasized by an oath, to throw a slippery tie on top of what was likely an unstable stack, while plaintiff was stooping to obey his order, might induce reasonable men to find the duty of observing due care for plaintiff's safety, was violated. Aside from the intrinsic danger of throwing a tie on top of the slippery pile when plaintiff was stooping on the opposite side, it is to be remarked that an order given in that style, was adapted to disconcert the men who were carrying the tie and make them more precipitate in tossing it than they otherwise would have been, when more care than usual was required because of plaintiff's exposed position. If the inference that defendant failed to use due care for plaintiff's safety, fairly may be drawn from the evidence by reasonable minds, the case is for the jury, even though the contrary inference can be drawn. [Baird v. Railroad, 146 Mo. 265.]

2. The argument for defendant is not so much that the evidence would not support a finding of negligence on the part of the foreman, as that the petition does not count on his negligence, and for this reason we have quoted part of it. The petition does declare on the carelessness of the foreman as one act of negligence; for it avers that while plaintiff was at work, in a stooping posture, and in the exercise of reasonable care for his own safety, other employees of defendant who were there at work, by direction of said foreman, tossed one of the ties on the stack where plaintiff was at work, and said tie, by reason of the condition aforesaid (*i. e.* its icy condition) did not remain in place but slipped, and several of the ties were caused to slide and roll down upon plaintiff. The other quoted portions of the petition enforce the notion that, not only was the foreman careless in respect of ordering plaintiff to work in a place not reasonably secure, but was careless also in ordering the tie to be thrown on the tall stack while

plaintiff was bent over near it, in the performance of a task the foreman had assigned to him.

3. We detect no want of care for his own safety in the way plaintiff acted, and are sure the conclusion is fair that he was not to blame, in any degree, for the accident. This defense has not been pressed and, at best, was for the jury. If the foreman was to blame and his duties and authority were such as to prevent him from being classed as a fellow-servant of plaintiff, the action cannot be defeated under the law of this State or of Illinois, on the ground of an assumption of the risk by plaintiff; for a servant does not take the risk of injury from the negligence of his master, or a vice-principal of the master. [Miller v. Railroad, 109 Mo. 350; Offcut v. Co. Ex. Co., 175 Ill. 472; Elgin, etc., Railroad v. Myers, 226 Ill. 258, 361.] Those two Illinois cases hold that "one of the limitations upon the doctrine of assumed risk is, where the servant, by the order of the master or one standing in that relation, is directed to encounter a danger and he obeyed the order, he does not assume the risk unless the danger is so great that an ordinarily prudent person would not have assumed it." In Pullman Palace Car Co. v. Laack, 143 Ill. 242, 256, it was said:

"As a general rule, the servant assumes the natural and ordinary risks of the business in which he engages, and is held to impliedly contract that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant, in the employment of whom the master has exercised proper care, but he does not assume or contract to waive liability of the master for his own negligence, whether committed in person, or by an agent authorized by the master to perform a duty resting upon him. In such case, the master being under contract duly to perform, the servant may, without sufficient appearing or being shown to put him upon notice to the contrary, rely upon the due and reasonable performance of the duty. The law

will not permit the master to evade the duty which it has cast upon him, by shifting it upon another."

As to what circumstances make an employer a vice-principal of the master and what make him a fellow-servant of his co-employees, we think the law of Illinois does not differ materially from our own. In City of La Salle v. Kosta, 190 Ill. 130, 141, this was said on the subject:

"Where a master confers authority upon one of his employees to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; and all commands given by him within the scope of his authority are, in law, the commands of the master."

When regarded in the light most favorable to defendant, the facts of the present case would not justify a court in ruling that the foreman of the tie gang was plaintiff's fellow-servant. We need decide no more than this to dispose of the point. If the facts regarding the foreman's duties turn out to be undisputed, and such that reasonable minds cannot differ about the conclusion to be drawn from them, whether the fellow-servant relation existed will be a question of law; otherwise one of fact. [Ill. Steel Co. v. Coffey, 205 Ill. 206; Chicago Hair & Bristle Co. v. Mueller, 203 Ill. 558.] We have been cited to no Illinois decisions which hold contrary to what we have said, though the Supreme Court of said state enforces the defense of assumption of the risk more stringently than our Supreme Court does, against servants who work with defective appliances and tools, and continue in service knowing that they are exposed to dangers which the master has promised to obviate. [Elgin, etc., Railroad v. Meyers, 226 Ill. 359 et seq.] The idea of the defense of assumed risk as presented in

the brief for the defendant in the case at bar, seems to be this: because the condition of the stack of ties with regard to height, slipperyness and general insecurity, was not only obvious to plaintiff, but it was his duty to keep the ties properly arranged, he must be held to have assumed the risk of its falling while he was stooping near it. This would be a plausible and, we think, a sound argument, if plaintiff had stooped after the stack was finished, and it fell in consequence of the way the ties were arranged without the application of outside force. The argument omits two important considerations: plaintiff had good reason to believe, because of the height of the stack which fell and the order of the foreman to start a fresh one, that the first stack was complete and no more ties would be thrown on it, and while he was acting on this assumption, another tie was thrown on it by the foreman's order, whereby it was caused to fall. The foreman's conduct introduced an unexpected and disastrous source of peril, akin to the latent danger dealt with in Doyle v. Railroad, 140 Mo. 1, while the plaintiff was carrying out an order which it is fair to find he could obey without rashness; and this fact serves for a distinction between the case at bar and McCormick Machine Co. v. Zakzewski, 220 Ill. 522, wherein the plaintiff sued for an injury sustained by the falling of a pile of icy lumber he was working about. When hurt he was obeying a direction of his foreman to remove the lumber; but he was ordered to do it, and the foreman did nothing to increase the danger of the work while it was in progress.

The judgment is reversed and the cause remanded. All concur.